Do we not have our FOE council today? Okay.  Great. Why don't you join us? What side have you taken, Mr. Furman? It doesn't matter, Your Honor. Okay. All right. I'm flexible. I'm not married to a side. Okay. Other than your righteous arguments, you're married to the... Yes, Your Honor. Okay. Good morning, Your Honors. Good morning. May I please the court? Do you want to reserve some time? Yes. I'd like to reserve four minutes. Okay. This is a... We're here on the grant of a summary judgment motion, and we don't believe that a summary judgment is appropriate in this case because there are triable, legitimate, disputed issues of fact that the court needs to hear and judge the credibility of the witnesses. Unfortunately, you can't look at a piece of paper and judge the credibility. There's nothing like having a witness on the stand and looking at them in the eye and making a determination for yourself that this is a credible witness or this is not a credible witness. My question about that is that she certainly denied having fraudulent intent. I saw that. But she didn't really have an explanation of what reasons she had for making the transfers other than keeping it away from her creditors. Is there something I'm missing on the record in that respect? I think so, Your Honor. I think her declaration doesn't just say, oh, I never had any fraudulent intent. I'm leaving it at that. She tells you the history of how this property came about, that her parents created this trust and made her and her brother the beneficiaries of the trust. And then when they wanted to invest in some income-producing property for the benefit of the mother whom she and her husband were taking care of, they wanted to invest some money in some income-producing property, and they went to get a loan, and then they couldn't get a loan because of the title problems. What were the title problems? In 2007, her father, who was a refugee from Vietnam—he was in the Vietnamese Navy, but a refugee and not overly sophisticated in financial matters—made a deed and put Mary and her brother, David, on title, and there was a—created a confusion with— Why was that confusing? Because he was the trustee of the trust. The father was the trustee of the trust at that point. Yes. Yes. But even beyond that point, the transaction that I think has been challenged here is the one from the two individuals to the extent they held individually tenant and common rights to a trust, right? That's the transaction that's being challenged. So why did Judge Clarkson make a factual error in determining—in deciding which transaction was at issue here? Because I think the—well, the implication, and that may be more expressed than implication, is that as to that transfer, there didn't seem to be any basis to make that other than to avoid the creditors. So help us with that part. I think the—you've got to look at the transaction as a whole in that they went to a professional estate planning attorney and explained the problems to them. The estate planning attorney drafted corrective deeds, and those are what were recorded. As a matter of fact, there were two corrective deeds, and that's what was recorded in there in the record as well. So that's how we kind of got a little sideways. But the parties have never considered this property as anything other than trust property. It was not Mary's personally. It was not David's personally. And I use the—their first names not as disrespect, but just to keep the party straight. That this property was the parents and the trust. They were going to get it upon the death of the parents, neither of whom are deceased. And so she, as she expressed her declaration, has always believed that this property is in trust. Okay. But the—to use your phrase, the overall form of this thing is that there are transfers to the two individuals, which is theoretically what needs to be done correctively to be able to exploit the property, do whatever you want. And then there's this further transfer that Judge Clarkson believed had with it all these badges of fraud to the other trust and then to the trustee of that trust. So I guess the question is, if he's looking at that part of the transaction, where is the error in finding that that—it looks like that is occurring when all these other things are happening that look like they're badges of fraud? It looks like they're badges of fraud. However, the issue with badges of fraud is they're not conclusive and essentially— Well, they sure are. I mean, the whole point is that you don't have to have somebody say, yeah, I defrauded you. Well, the problem with that, Your Honor, is that they're really two sides of the same coin in that you can't prove a negative. This other side of that is very few people walk into court and say, yeah, I did it. So they use badges of fraud. But then the defendant has the right to explain what happened and she explained what happened. Let me pull it apart a little bit for you then, going where I think you're going here. To Judge Ferris's point, I think you need something other than I didn't do it in the declaration. Because I think what we're doing, we're in danger of conflating credibility here with opposition to a motion for summary judgment. And what the cases tell us is that to oppose a motion for summary judgment, the opposing party has to come up with facts that would show an opposition or a genuine issue of material fact. What the brief really seems to focus on is she was entitled to tell the trier a fact she didn't do it. And I mean, credibility only comes into play when you have two different sides of a story. And what Judge Clarkson seemed to conclude here is there weren't two different sides of a story. So why was that an error, I guess I would put it that way? One, it was an error because she explained what happened. You can't take it in a vacuum. She explained what happened. She gave you the history of where this came about and how it came about and why the transfers are made. If he concluded that as to the last two transfers, the explanation had nothing to do with the transfers, why was that error? Because that seems to be what he concluded. It seemed to be what he concluded, but he didn't look at the whole things. And also, he didn't give the inferences to the non-moving party, which is a clear requirement of summary judgment. Any inferences have to be given to the non-moving party. And he didn't give those inferences. But only if they get over the hurdle of actually factual matters that would be in opposition to what's being asserted by the movement, right? So if he determined that the factual matters that you suggest your client was putting before him, if he concluded that those really weren't sufficient to oppose the motion for summary judgment, you're saying that's the mistake? That's error, Your Honor. Because he didn't give all the inferences that the defendants are entitled to in this case. And I think that if he sees Mary on the stand and looks at her, and he will determine that she's a credible witness, and the standard is, could a jury, could a trier of fact, judging the credibility of the witnesses at trial, rule in Mary's favor, and clearly they could. I'll come back to the point I was making that credibility is not an issue until you have two plausible stories. And what Judge Clarkson seems to have concluded is he didn't have two plausible stories. I think it is a plausible story. No, I understand. But that's where the issue is, I think, for what it's worth, okay? Your Honor, but again, ties go to the non-moving party in a motion for summary judgment. Only if you find it's a tie. That's a strong point in favor of the non-moving party is that you have to give them a chance. And the presumption is we should try cases on the merits and let people have their day in court. And that's all she's asking for here is a day in court to explain that this transfer was made in order to correct the problem and not to hide money from her creditors. Do you want to get to the second point, or do you want to reserve, or what would you like to do? Actually, Your Honor, I'd like to get to the second point. Okay. By the way, we're going to have a very lively discussion with your worthy opponent here. So if you want to reserve more than four minutes, it's up to you. I'll just touch on the other point briefly and then reserve. David Nguyen is a necessary party to this litigation. Judge Clarkson says, well, there's no evidence. It's speculation that the trustee is going to go after this property. Well, it's speculation that the sun's going to rise in the east tomorrow, but it's a pretty good speculation. And it was clear from the beginning the only reason to make this motion is to go after and liquidate the property, which is the duty of the trustee to liquidate assets. So that was clear from the beginning that they were going to go after this property. David should have been joined as a party to this because he's a beneficiary of that trust. He's a beneficiary of the property, and he certainly had the right to get his own attorney and be heard on this matter and put his two cents in. If they move to sell the property, if they used to dispose of the property, then he becomes a necessary party and has the right to object and oppose any kind of relief at that stage. But as to the setting aside the transfer from Mary, why is he a necessary party to that transaction? Because the two of them were both beneficiaries of the trust, and I asked the court to take judicial notice that the trustee subsequently filed an adversary under 363H in order to sell the property shortly after the ink was dry on the judgment from the bankruptcy court. But they haven't had that hearing yet, and he hasn't granted that relief without David's  consent. Not your honor. Okay. But it puts Mr. Nguyen, David, puts him behind the eight ball when the court's already decided that we can avoid this transfer. Okay. You're just about at four. Is this a good time? I'd like to reserve the rest of my time. Okay. Thank you very much. Thank you, your honor. Okay. Good morning, your honors, and may it please the court, Nathan Smith for the Pele Thomas Casey who's the bankruptcy, chapter seven bankruptcy trustee of the Zhang, Dong, and Mary Nguyen estate. Your honor, Pele filed a motion for summary judgment in this case, and appellants identified four allegedly disputed facts that they contended precluded summary judgment. David Nguyen is a one-half owner of the subject property. Debtors did not transfer the property with any intent to defraud anyone. Debtors only had naked legal title at all times. The beneficial interest in the properties remained with the trust. Mary Nguyen was not solvent at the time the corrective deeds were recorded in February 2021 and 2022. I believe the intent was to state that she wasn't in. Your honor, appellants contentions failed to create any genuine issue as to any material fact because David Nguyen was not a one-half owner of the Tustin property. Therefore, he was not a necessary party with regard to that property. David Nguyen also never held any interest in the Oklahoma properties. Zhang, Dong never held any interest in the Tustin property or Oklahoma properties. Therefore, his intent was not relevant. Can I get to the robust part of this? Certainly, your honor. I think my panel mates will tell you what they think. I think I understand this reasonably well to the extent that there was initially a complaint about a transfer of the Tustin property, right? Where I'm not following the logic nearly as well is what happens after that. So getting the half interest in the Tustin property back for the trustee is one thing under the fraudulent transfer statute of 550. It's the other relief I'm struggling with. So can you tell me where in the judgment or where in the arguments that were made before Judge Clarkson we would get to the other relief that the judgment provided, which is dealing with the proceeds from the loan and dealing with two Oklahoma properties? Well, your honor, what transpired in connection with the Tustin property is Mary Nguyen and David Nguyen first transferred that property to the Williams Land Trust. I know that. With California Property Management as trustee. Then they encumbered the property with an $850,000 lien, which is not a fraudulent transfer. What's the legal basis for setting aside those subsequent transfers? That's what we're struggling with here. Well, your honor, it's the fact that this would have been an asset of the bankruptcy estate had the transfer not occurred. And now it is. You get it back. And what happened is the equity in the Tustin property was sucked out. Got it. We got it. We're getting the property back is not the problem. It is what it is. You either get the value or the property under the statute. How do you get the property and or the proceeds when the statute doesn't say you get anything more than the property or its value? So you could have got a judgment for the value, what it would have been on the filing date because that transfer occurred pre-petition. Could have got it on the filing date, could have established what it was and said, give me a judgment for that amount or give me the property back. That's what statute provides, right? How do you get to the next level and then beyond that to other properties? Well, your honor, the bankruptcy court did enter a monetary judgment against California property management as well. And to the extent that there's a recovery from the Oklahoma properties, it'll reduce the amount that's owed on the judgment against California property management. What we're struggling with is how does he reason? What is the statutory predicates that give him and the trustee the power to require those properties to be returned to the bankruptcy estate? There doesn't seem to be anything beyond 550. Well, your honor, I believe because the value of the property was extracted from the property and transferred and it can be traced to the acquisition of the Oklahoma properties through bank statements that these were actual dollars that came from the property to- Can I stop you? I think I'm hearing the beginning of a theory here. That is nowhere on the judgment as far as I can tell. And it is nowhere in anything that was argued expressly to Judge Clarkson. So we're sitting here wondering, I mean, let me be sympathetic. I think 550 is a little opaque in some ways. You can get the property back. You can get the value of the property. I'm very sympathetic that because there's usually a lag between the bad act and when somebody knows enough to go do something about it, there may be some exploitation in the meantime. There may be some extraction. I'm not suggesting that that puts you on the wrong side of equity. What I'm suggesting is we're struggling with how that fits with 550. And let me say, there may be five other wonderful arguments you could make before Judge Clarkson were we to remand this, but we're just struggling that we don't think we know what they are right now. Well, Your Honor, in the motion for summary judgment itself, all that evidence was presented, the bank statements, the loan documents, Your Honor, the bank statements, the escrow statement that showed the money going into the bank accounts and then the money coming out of the bank accounts. We see the factual basis. We understand that. The question is more, what's the legal basis? Exactly. For going after the proceeds of fraudulently transferred property? Well, Your Honor, I believe the legal basis is because the court couldn't just give the trustee the property because something of value had been taken from the property. Then you give a judgment for its value. Those are the two choices under 550. That's one argument anyway. Well and that's what the court did in part, Your Honor. Where there is a monetary judgment against California Property Management in addition to the avoidance of the transfers of the Tustin properties, the court just went a step farther and avoided the transfer of the Tustin. But that would be a determination that something that California Management, who's not a debtor, committed some kind of a fraudulent act in allowing a loan to be made and taking the proceeds and giving the proceeds to somebody else. There was consideration for that. You didn't put any evidence in that would demonstrate that they were part of a scheme or that any of that, at least we couldn't see any of that. We understand what happened, but there was no allegations that would have supported further relief beyond 550. Well, Your Honor, I think the facts lead one to the conclusion that it was all part of one fraudulent scheme. Because if these properties were not transferred out of Mary Wynn's name, John Dickman and Tracy Dickman were going to get a judgment against them for $2.5 million. That part we get. But I guess, can I rephrase it a little bit? I think it's exactly consistent with what Judge Gann's asking. If we take this as far as 550 seems to go to us, the trustee ends up with Mary's interest in the property back, having avoided the transfer of that property. At that point, he has rights as the owner of that to do various things. Maybe it's another fraudulent transfer claim. Maybe it's something else, the wrongful exploitation of the property. I don't know what it is. But at that point, he has those rights. And to the extent that those rights go no further than what Mary's interest was, he can exploit them. Right? And to us, there's a missing piece here. That we don't see how you get to the ultimate remedy just because you can avoid the first transfer, which is really the only thing that looks like 550 is really going to sanction here. So that's our problem. Well, again, Your Honor, I think it was all part of one fraudulent device. I think that the court had the authority. But CPM isn't transferring the debtor's property. Right? Well, no, Mary Wynn orchestrated the transfer. The transfer you're complaining about is to CPM and then to, well, maybe just to CPM at the end of the day because they were the trustee. But that transfer is not a transfer of the debtor's property. So 548 doesn't work there, right? In Your Honor, CPM was only the trustee in connection with the first transfer of the Dyson property, the Williams Land Trust. Thereafter, Your Honor, the property was transferred to CPM exclusively. Right. But what we're trying to figure out, I mean, I'm sympathetic that the picture you're painting may ultimately convince Judge Clarkson that we need to think more expansively about 548. But it's not clear to us that that was articulated and that there was a legal theory that would get you to the further. It's just totally a remedies question, okay? That's really what this is. So that's where we're stuck. I think you hit the nail right on the head a few minutes ago when you said the court then took it a step further. I think that's exactly what happened. Yeah, that's what we're worried about. What we don't see is, and there may be a perfectly good reason for doing that, but we don't see that reason articulated in what Judge Clarkson said. And I think Judge Clarkson concluded that it was all part of one fraudulent artifice. That would have been nice to have that in the judgment, wouldn't it? And some explanation of I find the following facts to support this remedy because that's not in there. It just, it seems that he finds a fraudulent transfer and then everything comes back without explanation. That's what we're struggling with.  So I mean, so if, for example, he would have said, look, I'm going to ignore the CPM apparent ownership here because it's all merry. If that was, if he would have said that, that would have at least been a theory for how you could sort of collapse things in F-548 work. But I'm not seeing that. And without that, what CPM does is whatever CPM does. They're not the debtor. Well, yes, Your Honor, but the funds that CPM used were all traceable back to the initial transfer. I think that that was an. And there's nothing necessarily wrongful about those, other than your theory that this was all done just to throw more chairs in front of the trustee or whomever. There's nothing wrongful about those transactions, right? I mean, they borrowed money, they signed a note, they got the money, they paid money, they got, you know, they spent money acquiring other properties. They got the properties. Those transactions by themselves are not wrongful at all, are they? Well, I think to the extent that the whole purpose of those transactions, it was part of the same fraudulent device to extract all equity from the property and transfer them to other properties that would not be. No, I hear you. I mean, it's difficult when the properties are exploited in the meantime. I get that. But I think we have to be careful about, you know, as your worthy adversary said in a different context, inferences are inferences, right? You have to be careful about them. So I think what we're pausing on here is if there's a further inference that, well, it was all Mary's doing, so CPM's involvement's neither here nor there, that's not something that was articulated to us or that we're necessarily, I'm convinced we would agree with as a theory. So and actually, I'm not trying to take too much time on this, but I'm not sure what we can do here other than express our confusion about the remedy piece because to the extent we're suggesting that we're not seeing arguments in the record, I don't know that we can rule on them or we can make any other fact. We certainly can't make any factual findings here. So we're in a place where we're considering whether there's anything to do here but remand as to the remedies question only. Well, and your honor, I think the facts are in the record that support the conclusion regarding that this was all part of one fraudulent artifice. I will, your honor, state that the appellant didn't make any of these arguments with regard to the Oklahoma properties. Therefore, it would be my contention that these arguments are waived. They weren't argued in their opposition to the motion for summary judgment. I know. They weren't identified in their brief. I agree. They weren't identified in the issues. I agree. In fact, all the appellant has relied on this entire time, your honor, is the fact that there were these corrective deeds that were executed because a will and trust attorney informed Mary Wynn and her brother David that they needed to record these deeds and these deeds weren't even the deeds in question, your honor. So I think all these arguments have been waived, your honor. None of them have been explored. That relief in the motion for summary judgment wasn't even opposed. There was just arguments about transfer of the Tustin property, interest in the Tustin property. The entirety of the focus was on the Tustin property, your honor, and so none of this was ever explored. So to the extent that your honor has found the arguments in the motion for summary judgment lacking, there was... Can I give you... Well, it's not so much the arguments as much as certain matters simply weren't addressed. And I might be confused about something here. I think Judge Clarkson, at least to some degree, was careful to try to limit the relief to what would be attributed to the Mary interest, right? Yes. Okay. So how does the transfer back of the two Oklahoma properties work with that? Well, CPM maintains whatever interest CPM maintained. There was a division of the proceeds that I think is what the court did when it parsed out. So how do you end up with both of the Oklahoma properties if that's the case? Well, the half interest in the properties, your honor. Okay. So that would not have exceeded her half interest in your view because that was not clear to me at all. No, your honor. Okay. I don't believe so because she had a half interest at the time that she and David transferred their interest in the property to CPM as trustee and then from CPM as trustee to CPM individually. Okay. In fact, CPM maintains a half interest in the Tustin property, hence why the 363-H action were filed. No, I get that. The trust didn't avoid the entirety of it. Yeah. And greater monetary relief was actually sought through the motion for a summary judgment and in the complaint, Judge Clarkson actually reduced it in proportion to what he believed was attributable to the interest that was actually transferred. But the theory is that even with both the Oklahoma properties, we're still within that half interest, right? That's my understanding, your honor. That's been how we proceeded and that was what the relief we requested was. I'm sorry. So the result that you would like us to do is to affirm, irrespective of the fact that we feel that, and your argument back to us is, well, since they didn't raise it, if the judge exceeded his explanation or authority, that's just the way it goes because they didn't raise the arguments and so you should write a decision that allows a bankruptcy judge to do something that might not be explained or consistent with the code as long as nobody objects to it. Your honor, not necessarily my argument. Obviously, as counsel for the appellee, I'm going to make the argument that they've waived these arguments on appeal. However, I think there's a sufficient factual basis in the record. Perhaps the findings of fact and conclusions of law could have included slightly more robust verbiage, but I think that the result that the court, the eventual judgment that was entered by the court, I think was supported, your honor. I think it's supported. Well, we get the idea that there's a transfer that's bad and then what they do is hypothecate the interest in some way to devalue the property that you're going to be able to recover so that it just becomes more difficult to get the value out for the trustee. We follow that analysis. It's just difficult when there's many other steps that aren't adequately described other than we know the transaction, but we don't understand what the legal theory is, how you got there, what you determined, at what point it still remained hers, you ignored the corporate structure, you did this for this reason. Those kinds of things aren't in the decision anywhere that we could determine. I understand, your honor. I think what the court did was trace the funds. The fraudulent transfer itself continued. It was continuous and because the funds were readily traceable based on the evidence. I think it would be different, your honor, if these funds were commingled with other funds. It was difficult, but we could trace these funds dollar for dollar. All that evidence was in there. And if 550 said proceeds, you'd be home free. So that's what we got to struggle with. Thank you very much. That was a very good argument. Thank you, your honor. Thank you.  Gee, what's new? A whole bunch of stuff, your honor, but it seems to me that if the court has doubts about the lower court's ability to issue the award that it did, I think the court has to remand it to for further proceedings to resolve those issues. I think the court should remand it to get and have a trial on the merits and get to the bottom of whether there really is a fraudulent conveyance. I think counsel said it's all Mary. Well, it can't be all Mary. It's David and Mary. It's always been David and Mary. They're the beneficiaries of the trust, and that hasn't changed, and so it can't be all Mary. It's David and Mary. One of the things I'll tell you that I kind of struggle with, and it was the last dialogue with your adversary, if transfers of both the Oklahoma properties, in fact, would have exceeded, you know, the Mary transfer issue, then I think you do have a Rule 19 issue. Not the one you identified, but that sounds like if what Judge Clarkson is doing is pulling back for the estate, something that would have been allocated differently based on the interests of the parties, then I think, you know, David's all over that, as far as I'm concerned. That could be a Rule 19 issue, but I just don't, I'm not sure I'm understanding well enough what happened or what the rationale for it was, so I'm sorry, go ahead and react to that any way you want. Yes, Your Honor, I think the initial reaction of the judge was to say, this looks like a gloss over Mary's explanation and doesn't really look and give the benefit of the inferences that he's required to give, so he glosses over that and gets to the end without showing us how he got there. It's like when our math professors yelled at us for getting to an answer but not showing him or her how we got there. That's very apt, actually, and I think there's an awful lot that happens in fraudulent transfer law and bankruptcy that's kind of rough justice. It is difficult and tricky, and also you've got the perennial problem of how do you disprove a negative, which is the other side of the coin of badges of fraud because it's very difficult to prove a negative, but by the same token, not too many people waltz into bankruptcy court and say, yeah, I committed a fraud. But I think given the policy to try cases on the merits, she should get her day in court and she wants to sit in the witness stand and convince Judge Clarkson that she's not a bad person, that she didn't do anything wrong, that she tried to do the best she could to support her parents' trust, and that's what happened. Also, Your Honor, she wasn't looking at a judgment. She thinks she's going to prevail. We objected to their claim. Judge Clarkson combined our claims and objection with the non-dischargeability complaint that Mr. Dickman filed, but Mr. Dickman's claim, and I don't think it's in the excerpts, but Mr. Dickman's claim is for $2.5 million even, and it's three pages. There's not a single addendum attachment, not even the state court complaint is attached to that claim. So... The justice just gets rougher here, doesn't it? I gotcha. Okay. Anyway, that matter is set for trial on May the 27th, but I think there are too many holes here that I think the court needs to remand this, and we'd like you to remand all of it so that we try the issue of fraudulent conveyance. Let's try it, rather than go back and forth, which appellate courts abhor, rather than we go back and forth, we try a complete case. Well, I can tell you for sure the bankruptcy court abhors it when something gets remanded. And so we try a complete case, and if the court says, no, I didn't find her credible, I think you're not getting a reversal on a court looking at a witness's credibility on the stand and saying, no, I don't believe her. Got it. Thank you very much. Thank you for your very good argument. Thank you, Your Honor. The matter is submitted. Did you... I'm sorry, did I cut you off? No, we're done. Okay, sorry. Thank you. Thank you. I thought I was cutting off Judge Ferris there for a second. Thank you both. The matter is submitted. We'll get you a written decision as soon as we can. Thank you. Okay, thank you. Go ahead.
judges: Lafferty, Faris, and Gan